Matthew K. Teaford, Esq.
HOLMES WEDDLE & BARCOTT, P.C.
701 W. 8th Ave., Ste. 700
Anchorage, AK 99501
Phone: (907) 274-0666
Fax: (907) 277-4657
mteaford@hwb-law.com

Attorneys for Defendant Matanuska-Susitna Borough School District

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DISABILITY LAW CENTER,<br>   Plaintiff,<br><br>vs.<br><br>MATANUSKA-SUSITNA BOROUGH<br>SCHOOL DISTRICT,<br>   Defendant. | ) <br>) Case No. 3:06-CV-00216 TMB<br>)<br>) **DEFENDANT'S MEMORANDUM**<br>) **IN SUPPORT OF CROSS-MOTION**<br>) **FOR SUMMARY JUDGMENT**<br>) **AND OPPOSITION TO PLAINTIFF'S**<br>) **MOTION FOR SUMMARY JUDGMENT**<br>) |

## I. INTRODUCTION

Plaintiff, Disability Law Center of Alaska (hereinafter "DLC"), filed a complaint alleging a violation of the Developmental Disabilities Assistance and Bill of Rights Act of 2000 at 42 U.S.C. § 15041 et seq. (hereinafter "DD Act"). In that complaint, DLC alleged that the defendant, Matanuska-Susitna Borough School District (hereinafter "the District"), violated the DD Act, more specifically the implementing regulation 45 CFR § 1386.22(b)(2), by declining to produce a teacher's personnel file and written documentation of post-investigation measures undertaken by the District.

More than five months since filing its complaint, and nearly six months since Investigator Cowan completed his investigation, DLC has filed a motion for summary

*Disability Law Center vs. Mat-Su Borough School District*        Case No. 3:06-CV-00216 TMB
Defendant's Memorandum in Support of Cross-Motion for Summary Judgment
and Opposition to Plaintiff's Motion for Summary Judgment        Page 1

judgment to compel the District to produce the teacher's personnel file and other documents. During all of that time, the teacher whose alleged improper conduct was the basis of DLC's investigation, at the beginning of the school year, has remained in her classroom with no further reports of complaints from students, parents, or anyone else.

As discussed below, the regulation upon which DLC relies does not provide for the relief requested, and the complaint on its face, therefore, fails to state a claim upon which relief may be granted. Furthermore, the fact that the teacher at issue has remained in the classroom for nearly an entire school year without incident, during which time DLC has done nothing by way of further investigation, belies DLC's position that it needs her personnel file to meet its statutory obligations under the DD Act. For these reasons, discussed more fully below, the District requests that the court dismiss the case, with prejudice, in accordance with Federal Rule of Civil Procedure 56.

## II. <u>FACTS</u>

According to the complaint, on or about May 22, 2006, DLC received a report of abuse by and/or involving a special education teacher (Ms. M) at Finger Lake Elementary School during the 2005-2006 school year. <u>See</u> Complaint at 2, ¶5. The report alleged certain inappropriate behavior by that teacher towards elementary age students with disabilities. <u>See</u> id. at ¶6.

On Thursday, August 24, 2006, a DLC investigator met with the principal of Finger Lake Elementary, David Nufer, and obtained copies of certain materials related to the District's investigation into the allegations of abuse. <u>See</u> id. at ¶9. The following day, DLC requested that the District remove the teacher from the classroom, arrange for interviews of

*Disability Law Center vs. Mat-Su Borough School District*      Case No. 3:06-CV-00216 TMB
Defendant's Memorandum in Support of Cross-Motion for Summary Judgment
and Opposition to Plaintiff's Motion for Summary Judgment                Page 2

staff members, produce directory information of the students in the classroom, and produce the teacher's personnel file. See id. at 3, ¶11.

On August 28, 2006, the District rejected DLC's request to remove the teacher from the classroom and declined to produce the teacher's personnel file, but permitted voluntary interviews to go forward. See id. at ¶12. On Wednesday, August 30, 2006, a DLC investigator interviewed several staff members. The teacher declined to submit to interview. See id. at ¶14. The interviews described some instances of abuse by the teacher during the 2005-06 school year. See id. at ¶15. Also on August 30, 2006, the District provided DLC with directory information as requested. See id. at 4, ¶17.

On September 5, 2006, DLC requested that the District provide written confirmation of steps it had taken to ensure the safety of students. See id. at ¶18. DLC also again requested that the District produce the teacher's entire personnel file, under authority it perceived from 45 CFR § 1386.22(b)(2). See id. The District declined to produce the personnel file and written documentation of steps taken as a result of its investigation. See id. at ¶19.

As a result of his investigation, Principal Nufer put several measures in place to address the allegations of abuse. Specifically, he changed the location of Ms. M's classroom so that it was located near his office and near the nurse's station in order to provide Ms. M with additional support. See Exhibit 1 (Affidavit of David Nufer), ¶9. He reduced her class size and assigned a new teacher's aide. See id., ¶¶10-11. He informed affected staff about the changes he had made. See id., ¶13.

*Disability Law Center vs. Mat-Su Borough School District*     Case No. 3:06-CV-00216 TMB
Defendant's Memorandum in Support of Cross-Motion for Summary Judgment
and Opposition to Plaintiff's Motion for Summary Judgment     Page 3

Principal Nufer did not memorialize the changes in classroom location, size, and teacher's aide assignment in any written document, although he did verbally inform DLC Investigator Cowan that he had made these changes. See id., ¶¶12-13.

In conducting his investigation, Principal Nufer did not refer to or rely on Ms. M's personnel file, nor did he review or access information in her personnel file when implementing measures following his investigation. See id., ¶6. Like all teachers' personnel files, Ms. M's file is located at the District's central office in Palmer and is not maintained at Finger Lake Elementary, which is located in Wasilla. See Exhibit 2 (Affidavit of Katie Gardner), ¶2. If Principal Nufer had wanted to access Ms. M's personnel file, he would have had to do so through the District's central office. See id., ¶3. He never did so. See id., ¶¶5-7.

In its complaint, DLC has requested that this Court order the District to produce Ms. M's entire personnel file and written documentation of steps taken as a result of the District's investigation into alleged abuse. The complaint fails to state a claim upon which relief may be granted. While the District agrees that this lawsuit should be decided, as a matter of law, on the parties' cross-motions for summary judgment, it is the District's position that its cross-motion for summary judgment should be granted and the complaint dismissed, with prejudice.

## III. STANDARD OF REVIEW

Upon motion, summary judgment should be granted if there is no genuine dispute as to a material fact and if the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the initial burden of showing that there is no

*Disability Law Center vs. Mat-Su Borough School District*   Case No. 3:06-CV-00216 TMB
Defendant's Memorandum in Support of Cross-Motion for Summary Judgment
and Opposition to Plaintiff's Motion for Summary Judgment   Page 4

genuine dispute as to a material fact.[1] The moving party does not have to present evidence, but instead need only point out the lack of any genuine dispute as to any material fact.[2] Once the moving party has met its initial burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[3] All evidence presented by the nonmoving party must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the nonmoving party.[4] The nonmoving party, however, may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[5]

## IV. **ARGUMENT**

DLC's complaint presents a single claim. See Complaint at 4, ¶20. Its claim is that the District violated a regulation promulgated pursuant to the DD Act in two ways: (1) by declining to produce Ms. M's entire personnel file; and (2) by declining to produce written documents that show what protective measures the District took as a result of its internal investigation. See Complaint at 4-5, ¶20. The pertinent facts are not in dispute: DLC requested production of Ms. M's personnel file and written documentation of any post-investigation safety measures undertaken, and the District declined DLC's request. Whether DLC is entitled to the documents requested can be decided as a matter of law on the parties' cross-motions for summary judgment.

---

[1] Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
[2] Id. at 323-25.
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).
[4] Id. at 255.
[5] Id. at 248-49.

*Disability Law Center vs. Mat-Su Borough School District*  Case No. 3:06-CV-00216 TMB
Defendant's Memorandum in Support of Cross-Motion for Summary Judgment
and Opposition to Plaintiff's Motion for Summary Judgment  Page 5

In its complaint, DLC alleged that 45 CFR § 1386.22(b)(2)(ii)-(iii) supports its request for relief.  See Complaint at 4.  In its motion for summary judgment, DLC also relies on subsection (b)(2)(iv) of the regulation.  The regulation at issue, 45 CFR § 1386.22(b)(2), was promulgated to implement that portion of the DD Act which permits restricted access to records and provides in relevant part:

> (b) Individual records to which P&A [Protection and Advocacy] systems must have access under § 142(A)(2)(i) (whether written or in another medium, draft or final, including handwritten notes, electronic files, photographs or video or audiotape records) shall include, but shall not be limited to:
>
> . . .
>
> > (2) <u>reports prepared</u> by an agency charged with investigating incidents of abuse or neglect, injury or death occurring at a facility or while the individual with a developmental disability is under the care of a member of the staff of a facility, or <u>by</u> or for <u>such facility</u>, <u>that describe</u> any or all of the following:
> >
> > . . .
> >
> > > (ii) the <u>steps taken to investigate</u> the incidents;
> > > (iii) reports and records, including <u>personnel records</u>, <u>prepared</u> or maintained by the facility <u>in connection with such reports of incidents</u>; or,
> > > (iv) <u>Supporting information that was relied upon in creating a report</u>, including all information and records which describe persons who were interviewed, physical and documentary evidence that was reviewed, <u>and</u> the <u>related investigative findings</u>; and
> >
> > . . .

(emphasis added).

DLC alleges that the regulatory language quoted above provides the authority for its production request.  See Complaint at 4-5 (Relief Requested).  DLC's interpretation of the regulation is supported neither by the language of the regulation nor by any court decision.

*Disability Law Center vs. Mat-Su Borough School District*  Case No. 3:06-CV-00216 TMB
Defendant's Memorandum in Support of Cross-Motion for Summary Judgment
and Opposition to Plaintiff's Motion for Summary Judgment  Page 6

### A. The regulation does not require the District to produce written documentation of post-investigation measures taken as a result of its internal investigation.

DLC has requested that the court order the District to produce any written documentation of steps or measures taken by the District <u>after</u> its investigation into the allegations of abuse. See Complaint at 4-5. In its motion for summary judgment, DLC contends that 45 CFR § 1386.22(b)(2)(iii) and (iv) support its request for any written reports of remedial measures. See DLC's Motion for Summary Judgment at 4. DLC misconstrues the plain language of the regulation.

The ninth circuit has directed that "[a] regulation should be construed to give effect to the natural and plain meaning of its words."[6] The words of 45 CFR § 1386.22(b)(2) state that a Protection and Advocacy agency ("P&A"), like DLC, can access certain reports prepared by a facility that provides services to individuals who qualify for protection under the DD Act. The regulation specifies which reports are subject to disclosure. The regulation states that reports that describe "steps taken to investigate the incidents" are subject to disclosure.[7] There is no dispute that the District has already produced the investigative report prepared by Principal Nufer. See Complaint at 2, ¶¶8-9; see Exhibit 1 (Affidavit of David Nufer), ¶4.

The regulation also allows DLC to access reports prepared by Finger Lake Elementary that may or may not describe "reports and records, including personnel records prepared or maintained by [Finger Lake Elementary] in connection with [the allegations of

---

[6] Bayview Hunters Point Community Advocates v. Metropolitan Transp. Com'n., 366 F.3d 692, 698 (9th Cir. 2004).

[7] See 45 CFR § 1386.22(b)(2)(ii).

*Disability Law Center vs. Mat-Su Borough School District*  Case No. 3:06-CV-00216 TMB
Defendant's Memorandum in Support of Cross-Motion for Summary Judgment
and Opposition to Plaintiff's Motion for Summary Judgment  Page 7

abuse at the school]."[8] The only report prepared by Finger Lake Elementary that may describe this information is Principal Nufer's investigative report which has already been produced. Notably, Principal Nufer's report does not reference any personnel records or remedial information.

Finally, DLC can access reports prepared by Finger Lake Elementary in its investigation of the allegations of abuse that describe "[s]upporting information that was relied upon in creating a report," together with "the related investigative findings."[9] The only report prepared by the District is the Finger Lake Elementary report prepared by Principal Nufer. As mentioned above, his report has been produced.

The words of the regulation say nothing about access to any document that describes remedial steps taken by the District <u>after</u> its investigation is completed and its investigative report is issued.

The District has produced all records to which DLC may have access under 45 CFR § 1386.22(b)(2). The regulation does not require the additional access DLC seeks.

**B.   Information regarding remediation has been provided.**

Notwithstanding the lack of regulatory directive to produce information regarding remediation, the District has verbally informed DLC of the measures taken upon completion of its investigation. Principal Nufer's sworn affidavit accompanying this motion again sets out the information previously provided to DLC regarding measures that he put in place at the school following his investigation. <u>See</u> Ex. 1 (Nufer Aff.) ¶¶9-12. He did not create a written document listing these measures, but he did discuss the measures with the affected members of his staff as is customarily done when changes of this sort are made in the

---

[8]   45 CFR § 1386.22(b)(2)(iii).
[9]   45 CFR § 1386.22(b)(2)(iv).

*Disability Law Center vs. Mat-Su Borough School District*          Case No. 3:06-CV-00216 TMB
Defendant's Memorandum in Support of Cross-Motion for Summary Judgment
and Opposition to Plaintiff's Motion for Summary Judgment                              Page 8

school. See id. ¶13. DLC's request for a narrative report regarding this information would require the District to create a written document in order to provide DLC with information that it already has. Its request for such relief is not only unauthorized under the DD Act and its regulation, but is also unnecessary.

### C. The regulation does not allow blanket access to Ms. M's entire personnel file.

The plain language of 45 CFR § 1386.22(b)(2)(iii) does not require the District to allow DLC blanket access Ms. M's entire personnel file. Rather, the regulation requires the District to allow access to any report prepared at Finger Lake Elementary that describes any personnel record prepared in connection with the District's investigation into the allegations of abuse. The regulation does not authorize direct access to an entire personnel file; rather, it allows DLC to access reports, such as Principal Nufer's investigation report, which may or may not refer to personnel records. That his report has been produced and demonstrated no description of any personnel record makes the relevancy or accessibility of Ms. M's entire personnel file even more questionable.

DLC attempts to bring the personnel file within the ambit of the regulation by asserting that Principal Nufer referred to and relied upon Ms. M's personnel file in conducting his investigation and in formulating remedial measures. See DLC's Motion for Summary Judgment at 5-6 (citing Affidavit of Ronald Cowan). DLC maintains that the personnel file was "supporting information that was relied upon in creating a report" within the meaning of 45 CFR § 1386.22(b)(2)(iv). Id. at 5. DLC's reliance is based upon both a misinterpretation of the regulation and upon a mistaken assumption by Investigator Cowan.

First, as discussed above, subsection (b)(2)(iv) does not allow direct access to an entire personnel file, but rather allows access to reports prepared by the school that describe

*Disability Law Center vs. Mat-Su Borough School District*  Case No. 3:06-CV-00216 TMB
Defendant's Memorandum in Support of Cross-Motion for Summary Judgment
and Opposition to Plaintiff's Motion for Summary Judgment  Page 9

supporting information that was relied upon in creating the report, even if the information being described happens to be a personnel record. Principal Nufer's report neither describes nor indicates that he relied upon Ms. M's personnel file in any way.

Second, the absence of any reference in his report to Mr. M's personnel file is not difficult to explain, since Principal Nufer did not rely upon, or even refer to her personnel file during his investigation or thereafter. See Ex. 1 (Nufer Affidavit), ¶¶5-6; see also Exhibit 2 (Affidavit of Katie Gardner), ¶¶5-7. In fact, Ms. M's personnel file, like all other teachers' personnel files is maintained at the District's central office and restricted from unsupervised access. See Ex. 2 (Gardner Aff.), ¶¶2-3.

Finally, that access to a teacher's personnel file is not required by the regulation is not surprising in light of the purpose of the access to records provisions in the DD Act. The Act and regulation pertain primarily to the records of individuals with developmental disabilities, namely students who are eligible for protection under the DD Act. See 42 U.S.C. § 15043(a)(2)(I) (pertaining to access to records of individuals with developmental disabilities); 45 CFR § 1386.22(b)(2) (same). Neither the Act nor the implementing regulation at issue in this lawsuit authorize an agency like DLC blanket access a teacher's entire personnel file.

### D. Alaska law restricts the release of personnel files.

The absence of any express reference to access to personnel files in the regulation must be considered together with the restrictions pertaining to disclosure of personnel files under Alaska law. Specifically, under 4 AAC 19.040, documents in a teacher's personnel file are not a matter of public record. In fact, the regulation prohibits the District from disclosing to anyone other than the teacher, or certain supervisory personnel, the teacher's

*Disability Law Center vs. Mat-Su Borough School District*        Case No. 3:06-CV-00216 TMB
Defendant's Memorandum in Support of Cross-Motion for Summary Judgment
and Opposition to Plaintiff's Motion for Summary Judgment        Page 10

professional evaluation or any document in the teacher's personnel file used in the preparation of the evaluation. Thus, a teacher's personnel file is exempt from public inspection under Alaska's Public Records Act, which provides that "records required to be kept confidential by a federal law or regulation or by state law [i.e. 4 AAC 19.040]" are excepted from the Act's general requirement that public records be available for public inspection.[10]

Furthermore, District policy implements 4 AAC 19.040 and provides that teachers' personnel files are to be maintained as confidential. See Exhibit 3 (Board Policy regarding Personnel Records). DLC should not be allowed to circumvent 4 AAC 19.040 and District policy by relying on a federal regulation that does not provide for the blanket access to personnel files.

### E. There is no other authority for permitting DLC the unrestricted access it seeks.

It is worth noting that DLC does not cite to a single decision from any court regarding the scope of the DD Act's records access provisions. Admittedly, there does not appear to be a published decision in which a court has decided the particular questions regarding access to records that are presented in this lawsuit. There are a few decisions, however, including decisions by federal circuit courts, which deal with access to records under the DD Act and its regulations.

The most recent circuit court opinions are from the seventh and second circuits. While neither decision addresses the specific dispute at issue here, both decisions contain a useful discussion of a P&A's authority to access certain records under the DD Act.

---

[10] AS 40.25.120.

*Disability Law Center vs. Mat-Su Borough School District*  Case No. 3:06-CV-00216 TMB
Defendant's Memorandum in Support of Cross-Motion for Summary Judgment
and Opposition to Plaintiff's Motion for Summary Judgment  Page 11

First, in a dispute arising in Wisconsin, the seventh circuit was asked to determine whether and to what extent the plaintiff P&A could access records uncovered during an investigation by a state agency into allegations of abuse in an elementary school.[11] In requesting access to records in that case, the P&A argued that it had blanket authority to access all records to investigate allegations of abuse, whether or not parental authorization was obtained.[12] The court rejected the P&A's argument, concluding that a P&A does not have blanket authority to access records in conducting an investigation, but that its authority is limited to that authorized under the DD Act and its regulations and must be balanced against the privacy rights of parents and students.[13]

Similarly, in a case arising in Connecticut and also involving a P&A's investigation of abuse at a school, the second circuit court construed the language of the DD Act and its regulation to determine how much access the agency should have to conduct its investigation.[14] The court explained that the Act allowed a P&A to have reasonable access to the school, and directory information, in order to investigate specific allegations of abuse supported by probable cause.[15] Here, the District has already provided that access.

---

[11] Disability Rights Wisconsin, Inc. v. State of Wisconsin Dept. of Pub. Inst., 463 F.3d 719 (7th Cir. 2006).
[12] See id. at 727.
[13] See id. 727-30.
[14] State of Connecticut Office of Protection and Advocacy for Persons with Disabilities v. Hartford Bd. of Educ., 464 F.3d 229 (2nd Cir. 2006).
[15] See id. at 242-46.

*Disability Law Center vs. Mat-Su Borough School District*  Case No. 3:06-CV-00216 TMB
Defendant's Memorandum in Support of Cross-Motion for Summary Judgment
and Opposition to Plaintiff's Motion for Summary Judgment  Page 12

Several other courts have also discussed the DD Act's provisions for access to records.[16] It is worth noting that in the cases where courts granted access to plaintiff P&As, it was access that the District has already provided in this case; that is, access to investigation reports, directory information, facilities, and staff for interviews. No court has ordered the production of a teacher's entire personnel file as is requested here.

### F. There is no basis for in camera review.

For the first time in its motion for summary judgment, DLC suggests that the court could conduct an in camera review of Ms. M's personnel file before deciding what portions of it to disclose to DLC. Because there is no basis under the DD Act or its implementing regulations to support a request for production of any part of the personnel file, there is no basis nor purpose for conducting an in camera review. The District has already fully cooperated with DLC's request for access to the school, to staff, and to pertinent records. Nothing further is required under the Act.

### V. CONCLUSION

DLC has requested access to records, including a blanket request for a teacher's personnel file, which is not authorized under the DD Act, its regulations, or by any court decision. The District fully cooperated with DLC in its investigation by providing directory information, allowing access to the school and for interviews with staff, and by providing

---

[16] See e.g. State of Connecticut Office of Protection and Advocacy for Persons with Disabilities v. Hartford Bd. of Educ., 355 F.Supp.2d 649 (D.Conn. 2005), affirmed 464 F.3d 229 (2nd Cir. 2006); Protection and Advocacy System, Inc. v. Freudenthal, 412 F.Supp.2d 1211, 1220 (D.Wyoming 2006); Pennsylvania Protection and Advocacy, Inc. v. Royer-Greaves School for Blind, et al., 1999 WL 179797 (E.D. Pa. March 15, 1999) (unpublished opinion, attached as Exhibit 4 per Local Rule 7.1(c)); Iowa Protection and Advocacy Services, Inc. v. Gerard Treatment Programs, LLC., 152 F.Supp.2d 1150 (N.D. Iowa 2001); Wisconsin Coalition for Advocacy, Inc. v. Czaplewski, 131 F.Supp.2nd 1039, 1044 (E.D. Wis. 2001).

*Disability Law Center vs. Mat-Su Borough School District*  Case No. 3:06-CV-00216 TMB
Defendant's Memorandum in Support of Cross-Motion for Summary Judgment
and Opposition to Plaintiff's Motion for Summary Judgment  Page 13

Principal Nufer's internal investigation report. The District also verbally informed DLC of measures that had been taken at Finger Lake Elementary to address classroom location, class size and other issues in response to Principal Nufer's investigation. Adjustments to classroom location, class size, and similar measures of the sort put in place by Principal Nufer in this case are not customarily reduced to writing, were not in this case, and no such written documentation is required under the DD Act.

Meanwhile, Ms. M has remained in the classroom with Principal Nufer's measures in place for nearly an entire school year and for more than six months since DLC completed its investigation. During this time, there have been no complaints about Ms. M. The District has met any obligations it had under the DD Act to cooperate with DLC's investigation, and nothing more is required. There being no basis for the relief requested under the DD Act and its regulations, the District requests that its cross-motion for summary judgment be granted, DLC's motion be denied, and the complaint dismissed in its entirety.

DATED this 1st day of March, 2007, at Anchorage, Alaska.

HOLMES WEDDLE & BARCOTT, P.C.

By s/Matthew K. Teaford
   Holmes Weddle & Barcott, PC
   701 W. 8th Ave., Ste. 700
   Anchorage, AK 99501
   Phone: (907) 274-0666
   Fax: (907) 277-4657
   E-mail: mteaford@hwb-law.com
   ABA No. 0305031

*Disability Law Center vs. Mat-Su Borough School District* Case No. 3:06-CV-00216 TMB
Defendant's Memorandum in Support of Cross-Motion for Summary Judgment
and Opposition to Plaintiff's Motion for Summary Judgment Page 14

Certificate of Service

The undersigned hereby certifies that
a true and correct copy of the foregoing
was served electronically this 1st day of
March, 2007, on the following:

Disability Law Center
3330 Arctic Blvd., Ste. 103
Anchorage, AK  99503
hollyj@dlcak.org



By  s/Matthew K. Teaford


X:\449\21091\pld\memo.cross motion summ judg.030107.doc

*Disability Law Center vs. Mat-Su Borough School District*  Case No. 3:06-CV-00216 TMB
Defendant's Memorandum in Support of Cross-Motion for Summary Judgment
and Opposition to Plaintiff's Motion for Summary Judgment  Page 15